## MELVIN JUNIOR HARRIS *v.* STATE OF MARYLAND

[No. 179, September Term, 1968.]

8

*Decided February 3, 1969.*

*Morris Lee Kaplan* (*Michael Lee Kaplan* on the brief) for appellant.

*Donald Needle, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Fred K. Grant, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The appellant, Melvin Junior Harris, contends on this appeal that the lower court erred:

    I  in denying a motion to dismiss the indictments;
    II  in proceeding to trial of the general issue when the

appellant made known his desire to appeal preliminarily from the judgment on the motion to dismiss;

III  in not determining the admissibility of evidence as to his identification at a lineup prior to trial of the general issue;

IV  in the admission of evidence obtained by an unreasonable search and seizure;

V  in rendering verdicts of guilty when the evidence was not sufficient to sustain the convictions.

## HISTORY OF THE CASE

Harris was convicted in the Criminal Court of Baltimore at a court trial which began on 25 January 1968 and concluded on 29 January of the following crimes and sentences were imposed as indicated on 14 February:

Indictment No.6421—assault with intent to rape Sharron Lee Boggs (1st count)—"to serve the balance of his natural life from 28th September, 1964, under the Jurisdiction of the Department of Correction."

Indictment No.6418 — assault with intent to murder Sharron Lee Boggs (1st count)—10 years concurrent with No.6421.

Indictment No.6419 — unnatural and perverted sexual practice with Sharron Lee Boggs (1st count)—10 years consecutive with No.6421.

Indictment No.6420—robbery of Virginia M. Bogar with a deadly weapon (1st count)—20 years consecutive with No.6421.

Indictment No.6422—daytime breaking of the dwelling house of Homer Boggs and another with intent to steal (1st count)—5 years concurrent with No. 6421.

Indictment No.1835 — robbery of Sharron Lee Boggs with a deadly weapon (1st count)—10 years concurrent with No.6421.

Indictments Nos. 6418-6422, inclusive, were filed on 21 December 1965 and indictment No.1835 on 27 April 1966. Harris had been charged in 1965 under indictments Nos. 4062-4066, inclusive, with the crimes charged in indictments Nos. 6418-6422,

tried thereon on 5 October 1965 and convicted. He appealed and the appeals were pending when the opinion in *Schowgurow v. State,* 240 Md. 121 was filed. Counsel then representing him filed a motion to dismiss indictments Nos. 4062-4066 on the basis of the *Schowgurow* decision and his former counsel, who had represented him at the trial, had also filed such a motion. On 29 December 1965 Harris was brought into the Criminal Court of Baltimore for arraignment on indictment Nos. 6418-6422. It was brought to the court's attention that the prior indictments were pending "on a motion to dismiss under *Schowgurow.*" The court granted the motion to dismiss.

I

## THE MOTION TO DISMISS THE INDICT-MENTS

### The Dismissal of the Prior Indictments

Although Harris had been represented by two experienced counsel whose appearances were entered eight days after his re-indictment, he filed a motion to dismiss the indictments in proper person on 11 October 1967. The motion, consisting of five pages of printing by hand, alleges insofar as we can ascertain, that at the time the prior indictments had been dismissed he had not had a remand hearing and had not been informed that he could waive objection to those indictments and have the appeal he had noted determined or that if he elected to void them he could be reindicted and retried.[1] When the case was called for trial on 25 January 1968 the motion was heard preliminarily. Counsel for Harris and the Assistant State's Attorney argued at length but no evidence was produced on the point except the transcript of the arraignment on 29 December 1965 at which time the indictments were dismissed, and we consider the matter on the record before us. Harris now urges that since it was error to dismiss the prior indictments, it was error not to dismiss the subsequent indict-

---

1. At the same time Harris also filed a motion to dismiss the indictments alleging that the grand and petit juries were unconstitutionally constituted and a motion "to disallow" his identification at a lineup at his trial.

ments. But he does not suggest that the prior indictments, dismissed, as he claims, in error, and his appeal thereunder be reinstated so that his fate may be determined on the convictions under the prior indictments. He apparently feels that he should go free. We know of no authority, nor does he cite any, which would compel his release, immune from further prosecution on the charges, on a finding that the prior indictments were improperly dismissed. At the most it would seem that justice would dictate that the convictions under those indictments would stand subject to appellate review of them on the appeal he filed from them. But we are not faced with that question because we find no error in the dismissal of the prior indictments. No authority is cited in the appellant's brief in support of his assertion that the prior indictments were improperly dismissed. But in *Blake v. State,* 2 Md. App. 492 it was contended, in reliance on the remand order in *Driver v. State,* No. 78, September Term 1965, Maryland Court of Appeals, that the absence of counsel at a hearing on a motion to dismiss indictments under the *Schowgurow* decision was a deprivation of the right to counsel at all stages of the proceedings. We distinguished *Driver* in that Blake's counsel had previously filed a written motion to "quash" the indictments. We said, at 495:

> "[T]he granting of the motion by the court was a mere formality, in no way harmful or prejudicial to appellant's rights. The *Driver* directive sets forth a procedural formula to be followed when the defendant has not raised a challenge and is thus entitled to be duly and fully informed of his rights in order to allow him to make an intelligent and knowing election of whether to take advantage of his rights under the *Schowgurow* decision or knowingly waive those rights."

We found that Blake had made his election under *Schowgurow* when his counsel filed the motion prior to the hearing and that it was not essential that counsel be present at the hearing. Here Harris made his election when his counsel filed the motion to dismiss. In open court when the indictments were dismissed, his counsel stood at his side. Pleas of not guilty and not guilty by

reason of insanity had been entered on the new indictments and Harris made no objection to the dismissal of the prior indictments as had been moved by him. Finding no error in the dismissal of the prior indictments, their dismissal is no ground for the dismissal of the subsequent indictments.[2]

## Speedy Trial

Harris also claims that the motion to dismiss should have been granted because he was denied a speedy trial. At the hearing the only evidence on the question was by copies of two letters to him, one dated 16 November 1966 from the bailiff of Chief Judge Dulany Foster stating that Harris' letter of 3 November requesting, among other things, a speedy trial, had been forwarded to Judge Shirley B. Jones and the other dated 30 November 1966 from Judge Jones' bailiff stating that the matter was not pending before her but that his letter was forwarded to the Clerk of the Criminal Court for inclusion in the file of the case and that a copy of the letter on behalf of Judge Jones had been sent to each of his attorneys. The brief of the appellant refers to these letters as showing that demand for a speedy trial had been made. But he presents no argument in support of the contention, merely baldly asserting that he had been denied a speedy trial because of "long delay" and that he was prejudiced when the State indicted him on "the new charge." He makes no allegation that the delay was capricious, arbitrary or oppressive on the part of the State, his only allegation of prejudice is without merit (see note 2 herein) and he made no showing of a strong possibility of prejudice to him. The record shows that a substantial part of the delay in trial was not properly chargeable to the State but was attributable to his own actions. He filed a plea of insanity on 29 December 1965 and on the same day was transferred to Clifton T. Perkins State Hospital for examination. The report of examination was filed on 3 March 1966 and on 11 March 1966 upon his petition he was authorized to employ a psychiatrist at State ex-

2. Harris claims he was prejudiced because after the dismissal of the prior indictments he was not only reindicted on those charges but indictment No. 1835 was filed against him charging another offense. As No. 1835 was returned during the applicable period of limitations the grand jury could have indicted him on the charge whether or not the prior indictments had been dismissed.

pense. He withdrew the plea of insanity on 9 February 1967 when he came into court for re-arraignment. It also appears, however, that by order of court Harris was referred again for psychiatric evaluation and was examined by Dr. Dennis T. Jones, the acting chief medical officer of the Supreme Bench of Baltimore City on 19 April 1967 to determine if he was competent to stand trial and responsible for his criminal conduct under the new test to become effective 1 June 1967. Chapter 709, Acts 1967. The report was dated 15 May 1967. When the case came on for trial on 25 January 1968 defense counsel said that Harris had been examined "by Dr. Battle, by Dr. Jones, by the Clifton T. Perkins Hospital" and found competent to stand trial and "legally sane at the time of the alleged commissions of the act." He then withdrew the pleas of insanity with the expressed concurrence of Harris. He filed three motions in proper person on 11 October 1967. The two which moved for dismissal of the indictments did not, as far as we can ascertain, give as a ground the denial of a speedy trial and the other moved for exclusion of identification evidence.[3] The appellant's brief is devoid of any authority in support of his contention that he was denied a speedy trial although we have fully discussed the constitutional aspects of the right in a number of cases. See for example, *Frazier v. State,* 5 Md. App. 88; *Brown and Montgomery v. State,* 4 Md. App. 141; *Stevenson v. State,* 4 Md. App. 1; *Hall v. State,* 3 Md. App. 680; *Fabian v. State,* 3 Md. App. 270; *State v. Long and Nelson,* 1 Md. App. 326. Applying the rules of law stated in those cases we find, on the record before us, that the appellant was not denied a speedy

---

**3.** The record contains a memorandum opinion and order dated 28 February 1967, whereby Judge George L. Russell, presiding in the Baltimore City Court, dismissed a petition of Harris for a writ of habeas corpus based on denial of a speedy trial. It is stated in the opinion that attempts were made to re-arraign Harris on 11 May 1966 and 20 September 1966 but he refused to make an election as to how he wished to proceed under his motion to dismiss the prior indictments under *Schowgurow,* even though the motion had been previously granted. On 9 February 1967 he was again rearraigned and the indictments were again dismissed. Pleas of not guilty were entered on his behalf as to indictment Nos. 6419-6422, inclusive, and he himself pleaded not guilty to indictment No. 1835.

trial and there was no error in the denial of the motions to dismiss on that ground.

## II

### APPEAL FROM THE JUDGMENT ON THE MOTION TO DISMISS

On 26 January 1968 after the lower court denied the motion to dismiss the indictments it said, "[W]e are now ready to proceed on the merits of the case." Defense counsel, claiming a right to appeal from the denial of the motion prior to trial, requested a continuance for the purpose of that appeal. The State agreed that such an appeal would lie but opposed any continuance, urging immediate trial of the general issue. The court said that the trial date was set by agreement of the parties, and "[i]t was the understanding of all parties that they were going to dispose of the case" (defense counsel indicated this was not his understanding). The court stated that several days had been set down to dispose of the motions and the trial. When the trial date was agreed upon no request was made to hear the motions preliminarily. The State has summoned its witnesses "and has gone to some expense and some trouble to bring them in." The court did not feel that a denial of the motion to postpone the case would in any way prejudice the appellant. It thought that a postponement for the reason advanced made "after all the witnesses have been summoned and after they have appeared * * * is not justification for the granting of the motion" for postponement. It denied the motion.

The argument in the appellant's brief on this point consists of a bald allegation that the lower court "was certainly in error in refusing the defendant the right to appeal its decision when it denied the Motion to Dismiss" and a quotation from *Brown v. State,* 2 Md. App. 388 at 393, in substance correct but inaccurately set out, that an appeal will lie, prior to a trial on the merits, from a denial of a motion alleging a denial of the constitutional right to a speedy trial. The allegation is based on an incorrect premise. The lower court did not preclude appellate review of its judgment on the motion to dismiss. A timely appeal was filed from the convictions, and the point being preserved and raised was properly before us and has been dis-

posed of. By denying a continuance the court merely precluded appellate review of the denial of the motion to dismiss prior to a trial on the merits and the case proceeding to trial did not result in any significant delay in obtaining the review sought. The question is whether the court, in the circumstances, erred in denying a postponement of trial.

A state is not required by the Federal Constitution to provide appellate courts or a right to appellate review at all. *Griffin v. Illinois*, 351 U. S. 12, 18. But when such a right is granted by a state, persons are protected from invidious discriminations with respect thereto or from improper denials of the right by the Due Process and Equal Protection Clauses flowing to the state through the Fourteenth Amendment. See *McCoy v. Warden*, 1 Md. App. 108, 121. In Maryland a defendant in a criminal action is granted the right to appeal from any conviction as provided by Md. Code, Art. 5, §§ 12 and 12A. And it has been established that an appeal will lie, prior to a trial on the merits, on the denial of a motion asserting a violation of the constitutional right to a speedy trial, as a corollary to the general rule that an appeal in a criminal case is premature until after final judgment. *Greathouse v. State*, 5 Md. App. 675. "The corollary is subject to the qualification that even though a constitutional right is involved, action of the lower court rightfully exercising discretion as to the functioning of the right will not be so reviewed." *Pearlman v. State*, 226 Md. 67, 71.[4] Although an appeal will lie, prior to a trial on the merits, from the judgment on a motion asserting a violation of the constitutional right to a speedy trial, the party seeking it must pursue the proper mode of prosecuting it in order to ob-

---

4. Thus an immediate appeal will lie from a denial of a mandatory change of venue in a capital case but not as to the appropriateness of the place of trial under the granting of such change. *Lee v. State*, 161 Md. 430. In *Cohen v. Beneficial Industrial Loan Corp.*, 337 U. S. 541, the Supreme Court held an order appealable " * * * because it is a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it." at 546; quoted more fully in *Pearlman v. State, supra* at 74. An appeal from a *pro forma* order or judgment is premature. Md. Rule 1035a1.

tain it. The mode of prosecuting an appeal to this Court is provided by Chapter 1000 of the Maryland Rules of Procedure, which governs an appeal in a criminal case under Rule 772. Rule 1011a provides in relevant part: "An appeal to this Court shall be taken by filing an order for appeal with the clerk of the lower court * * *." The lower court has no power to grant or deny an appeal. The Court of Appeals said almost 150 years ago that it is not necessary that the lower court grant an appeal demanded to enable the party to bring it up; "he was entitled to it as a matter of right, which could not be withheld, and had nothing to do, but to pursue the mode of prosecuting it * * *." *Thompson v. M'Kim et al*, 6 H. & J. 302, 330. In the instant case no order of appeal from the judgment on the motion was filed as required. Therefore, under Md. Rule 1085, the matter of an immediate appeal is not properly before us and we so held in *Brown v. State*, 1 Md. App. 571, at 575.[5]

It is possible under some circumstances that actions of the lower court or the State may have so prevented the filing of an order of appeal as to constitute a denial of due process or equal protection of the law; even though there is no constitutional right of appeal, there could be a constitutional denial of the right granted. But this is not such a case. The record indicates that defense counsel were competent and well qualified to defend the appellant. They were aware that the immediate appeal sought would properly lie and it does not appear that they were not familiar with the mode of prosecuting it. The appellant does not allege that he was prevented from filing the required order and we cannot find on the record that he was. It may be that counsel were persuaded by the remarks of the trial court not to pursue an immediate appeal but even if they were not and were deterred from doing so, we cannot find that they were prevented from filing the order of appeal. The matter did not reach the point where the lower court had before it a question of what its duty was on the presentation of an order of appeal to the clerk of the Criminal Court of Baltimore and we cannot assume that

---

5. Had the proper order been filed the lower court would thereafter have no jurisdiction to try the case on the merits until the appeal had been determined.

it would have acted improperly. Rather the court had before it a motion to postpone the trial of the general issue. Absent the filing of the order of appeal, it had jurisdiction over the case. The grant or denial of the motion was a matter for the sound exercise of its discretion. *Wilkins v. State,* 5 Md. App. 8, 19. We see no abuse of that discretion in the circumstances.

We think it advisable to point out that pleadings in a criminal proceeding include motions to dismiss and to grant appropriate relief. Defenses and objections raised before trial shall be raised by such motions. Md. Rule 725a. "A motion before trial raising defenses or objections shall be determined before trial *unless the court orders that it be deferred for determination at the trial of the general issue.*" Md. Rule 725d (emphasis supplied). If the court, exercising the discretion so granted, ordered that a pre-trial motion to dismiss based on a denial of a speedy trial or any other ground be deferred for determination at the trial of the general issue, there would be no judgment from which to take an immediate appeal. The question, if preserved and presented upon appeal from a conviction, would then be whether the exercise of discretion in deferring the determination was abused. However, with regard to the suppression, exclusion or return of evidence obtained by a search and seizure alleged to be unlawful, a motion pursuant to Md. Rule 729, § b1 filed after indictment and at least 5 days prior to the trial date or a petition filed pursuant to § b2 and transferred to the criminal court having trial jurisdiction pursuant to § b3 shall be determined prior to trial by the provisions of § d1. In all other cases under Rule 729 the court has discretion to determine the motion as a preliminary matter or during trial. In any event we find it the clear intent under Rule 729 that an immediate appeal will not lie from the denial of such a motion or the overruling of such a petition prior to trial but that appellate review on such judgment is preserved on appeal from the conviction of the defendant. § f and § g2. See *Mace Produce v. State's Attorney,* 251 Md. 503. And as to the defense that the accused was not responsible for his criminal conduct or that he was not competent to stand trial see Md. Code, Art. 59, §§ 7-12 and *Strawderman v. State,* 4 Md. App. 689.

## III

### THE DETERMINATION OF THE ADMISSIBILITY OF IDENTIFICATION AT A LINEUP

On 11 October 1967 the appellant, in proper person, filed a motion "to disallow" the identification of him made at a police lineup. The motion was heard prior to trial and defense counsel argued that the lineup identification and an anticipated in-court identification should be suppressed under the decisions in *United States v. Wade,* 388 U. S. 218, *Gilbert v. California,* 388 U. S. 263 and *Stovall v. Denno,* 388 U. S. 293. The court said, "Your motion to suppress as of this time is denied. You may make your motions when the occasion presents itself (during trial)." The contention as stated in the appellant's brief reads: "The court was in error in allowing the lineup identification into evidence without deciding the issue before trial." However the argument made in the brief is not directed to the contention as stated. It reads in its entirety:

> "The Defendant contends that evidence or testimony of the line-up should not have been introduced into his trial. The Defendant contends that the legal principals applied in United States v. Wade, 388 U. S. 218 should be applied to his case. The Defendant feels that even though the line-up was prior to June 12, 1967 that his case was not tried until January 29, 1968 therefore, the *Wade* case should apply to his case."

The answer to the contention as stated is that it is not material whether the court's action be considered as making a determination of the motion before trial or deferring it for trial of the general issue. He could do either. Md. Rule 725d. The answer to the argument made is that *Wade* and *Gilbert* affect only those cases and all future cases which involve confrontations for identification purposes conducted in the absence of counsel after 12 June 1967. *Stovall* at 296; *Palmer v. State,* 5 Md. App. 691. The lineup here was conducted prior to that date; the date of the lineup, not the date of the trial, is controlling.

IV

## THE ADMISSION OF THE EVIDENCE

The issue of the legality of the arrest of the appellant was raised during trial. Officer Arnold Saboy testified that about 4:40 P.M. on 10 October 1964 he was on duty in the 1200 block of Bolton Street crossing an alley which runs parallel to the 200 block of West Lanvale Street. He heard Mrs. Hattie Davis "holler." He went up the alley and Mrs. Davis told him a man had just grabbed a woman's pocketbook and run around the corner. She described the man. The officer and Mrs. Davis ran to the corner and saw the man running across a lot to Eutaw Street. Mrs. Davis said, "That's the man." The officer pursued him on foot, stopped an automobile coming up the street and continued the pursuit in the automobile. The fleeing man turned a corner into Dolphin Street and was out of the officer's sight "about a couple of minutes." He caught sight of him again and apprehended him after pursuing him about two blocks. "The lady's pocketbook was sticking out of his right jacket pocket." At the trial the officer identified the appellant as the man he had apprehended. He took the arrestee back to Mrs. Davis. The victim, Virginia M. Bogar, was also present and she identified the pocketbook as belonging to her. The appellant was taken to the police station and searched. He had in his possession a pair of men's gloves, a penknife, a lady's stocking and a library card bearing the address 2617 Pennsylvania Avenue. The appellant signed a document authorizing the police to search his residences located at 2617 Pennsylvania Avenue and 4110 Park Heights Avenue. Evidence was seized in a subsequent search of 2617 Pennsylvania Avenue. The appellant argues in his brief, without citation of authority, that the arrest was not upon probable cause that a felony had been committed and therefore was illegal. The lower court found from the testimony of the officer that he had probable cause to believe that a felony had been committed—"it could have been a robbery" —and that the appellant had committed it. We agree. *Brown v. State,* 5 Md. App. 367; *Simms v. State,* 4 Md. App. 160. The arrest being legal the evidence in the possession of the appellant was obtained by a reasonable search and seizure as inci-

dent to the arrest. The appellant does not claim that the consent to search 2617 Pennsylvania Avenue was not freely and voluntarily given, merely asserting that if he had not been illegally arrested he would not have signed it. The lower court found that the consent was voluntary and the appellant does not now dispute that finding. Thus the evidence found on the premises was obtained by a reasonable search and seizure. *Simms v. State, supra.* We find no error in the admission of the challenged evidence.

V

## THE SUFFICIENCY OF THE EVIDENCE

The appellant does not question the sufficiency of the evidence to sustain the conviction of the robbery of Virginia M. Bogar (indictment No.6420). His contention is only as to those cases "concerning Miss Boggs." And as to those cases he does not claim that the *corpus delicti* of the crimes were not proved, urging, again without citation of authority, only that his criminal agency was not established. His argument in this respect goes to the weight of the identification evidence and the credibility of the witness. But these are matters for the trier of fact. *Melia and Shelhorse v. State,* 5 Md. App. 354; *Logan v. State,* 1 Md. App. 213. The victim made a positive in-court identification of the appellant as the man who had committed the crimes charged and said that her identification was "based purely" on her observation of him at the time of their commission. A victim's identification alone, if believed, is sufficient to prove criminal agency. *Wilkins v. State, supra; Crumb v. State,* 1 Md. App. 98. And the appellant had in his possession various items taken from the victim's residence. The proof of the *corpus delicti* not being disputed and there being credible evidence from which the lower court fairly could be convinced beyond a reasonable doubt of the appellant's guilt, its judgments on the evidence were not clearly erroneous and we may not set them aside. Md. Rule 1086.

*Judgments affirmed.*