## DARLENE A. NEAL *v.* STATE OF MARYLAND

[No. 407, September Term, 1973.]

*Decided February 11, 1974.*

---

22. The appeal in No. 380 was prosecuted by Trader as an indigent.

The cause was argued before ORTH, C. J., and MORTON and THOMPSON, JJ.

*Murray L. Deutchman* for appellant.

*Arrie W. Davis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Frank Santoro, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

This case provides an opportunity to re-examine some aspects of appellate review in criminal causes. Specifically, we shall look again at the position taken with regard to the right of an accused to an immediate appeal from a pre-trial refusal of the trial court to dismiss the indictment [1] under which he is charged.

## I

The right of the State to appeal in a criminal case is severely limited by statute [2] and by constitutional guarantees to the accused.[3] The right of an accused to appeal

---

**1.** " 'Indictment' shall include a grand jury indictment, a criminal information and a charging document as defined in Maryland District Rule 702." Maryland Rule 702 a. Under Md. Dist. Rule 702 a, " 'Charging document' means arrest warrant, summons to a defendant, statement of charges, citation, or criminal information."

**2.** "In a criminal case, the State may appeal only from a final judgment granting a motion to dismiss or quashing or dismissing any indictment, information, presentment, or inquisition in a criminal case." Courts and Judicial Proceedings Article (hereinafter cited as "Courts Art.") § 12-302 (c). We have said the statute means exactly what it says, *State v. Simms,* 13 Md. App. 203, 205, citing *State v. Hunter,* 10 Md. App. 300. See *State v. Lohss,* 19 Md. App. 489. For a discussion of "inquisition", see concurring opinion of Orth, J. in *State v. Mather,* 7 Md. App. 549, 555-558.

**3.** The Fifth Amendment to the Constitution of the United States includes the guarantee "* * * nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb * * *." It applies to the States through the Fourteenth Amendment. *Benton v. Maryland,* 395 U. S. 784, 787. Prior to *Benton,* protection against double jeopardy in Maryland was available only by way of the common law, there being no clause in the State constitution prohibiting it. *Greathouse v. State,* 5 Md. App. 675, 688-689.

is much broader. The general rule is that he may appeal from a final judgment.[4] Courts Art. § 12-301.[5] The restrictions on the right of appeal bestowed upon an accused are, in the main, matters of procedure rather than of substance. Under Maryland Rule 1035, we are directed "not [to] entertain or consider an appeal taken from a *pro forma* order or judgment," and are required by the Rule to dismiss such appeals "as prematurely taken." We said in *Raimondi v. State*, 8 Md. App. 468, 470: "The cases have long recognized the principle that an appeal in a criminal case is premature until after final judgment, viz., that appeals from interlocutory orders of the trial court in criminal cases are not allowed." So in *Raimondi*, we held that an order denying a motion by the accused to dismiss an indictment on the ground that widespread publicity prevented a fair trial was an interlocutory order and not immediately appealable. We pointed out that we reached the same conclusion "* * * that there is no right to file an immediate appeal from a denial of a pretrial motion to suppress evidence allegedly seized in contravention of the Fourth Amendment to the federal constitution, *Harris v. State*, 6 Md. App. 7, and *Pearce v. State*, 8 Md. App. 477 (1970); from an order overruling the defendant's constitutionally grounded exceptions to the State's answer to his motion for discovery and inspection, *Dodson v. State*, 8 Md. App. 478 (1970); from the granting of the State's motion in a noncapital case for a change of venue, *Davis v. State*, 8 Md. App. 480 (1970); from refusal to grant a motion to dismiss an indictment on the ground that the State's witnesses had made pretrial identifications of the accused in contravention of the principles enunciated in *United States v. Wade*, 388 U. S. 218, *Gilbert v. California*, 388 U. S. 263, and *Stovall v. Denno*, 388 U. S. 293, see *Powers v. State*, 8 Md. App. 487 (1970); or from refusal to grant a

---

**4.** " 'Final judgment' means a judgment, decree, sentence, order, determination, decision, or other action by a court, * * * from which an appeal, application for leave to appeal, or petition for certiorari may be taken." Courts Art. § 12-101 (f). The revisor's note points out "This definition does not attempt to specify what is an appealable final order. That is left to case law, as at present."

**5.** See exceptions set out in Courts Art. § 12-302. For review of decisions of the District Court, see Courts Art. § 12-401.

24

motion to dismiss indictment.- on the ground that they were technically defective, *Greathouse v. State, supra.* See also *Kardy v. Shook,* 237 Md. 524, holding that an order of the trial court permitting the taking of a pretrial deposition is interlocutory in nature and not immediately appealable." 8 Md. App. at 474-475. In *Edwards v. State,* 16 Md. App. 255, we held that an order denying a motion to quash charges was interlocutory and the appeal was premature where the only ground was failure of the State to comply with provisions of the Interstate Detainer Act. In *Kable v. State,* 17 Md. App. 16, we concluded that notice of appeal from a denial of the accused's motion to dismiss the criminal information charging bribery on the ground he was entitled to indictment by a grand jury was an interlocutory nonappealable order. We observe that an accused may still obtain appellate review of all of these matters in the event he is convicted of the substantive offense upon trial on the merits. Rule 1087 provides: "On an appeal from a final judgment, every interlocutory order which has previously been entered in the action shall be open to review by this Court unless an appeal has theretofore been taken from such interlocutory order and been decided on the merits by this Court." [6]

In the face of the rule that there can be no appeal except from a final judgment, the Court of Appeals, and the Court of Special Appeals following its lead, have entertained an immediate appeal from the refusal of the trial court prior to trial to dismiss an indictment because of the lack of a speedy trial.[7] *Jones v. State,* 241 Md. 599; *Harris v. State,* 194 Md. 288; *Stevenson v. State,* 4 Md. App. 1. And in *Brown v. State,* 2 Md. App. 388, we held that an immediate appeal would lie, prior to trial on the merits, from the denial of a motion asserting a violation of the constitutional right not to be twice put in jeopardy. This was done as a corollary to the

---

6. For the right to appeal from certain interlocutory orders in civil cases, see Courts Art. § 12-303.

7. We noted in *Raimondi,* 8 Md. App. at 473, that most such appeals have been patently frivolous, see *Westmoreland v. State,* 8 Md. App. 482. Very few have been found to have merit. See *Wilson v. State,* 8 Md. App. 299.

rule prohibiting appeals from interlocutory orders. It was explained in *Pearlman v. State,* 226 Md. 67, 71:

> "There has been applied through the years a corollary to the rule that there can be no appeal except from a final judgment. Action of a trial court which denies an absolute constitutional right, although seemingly interlocutory, will be reviewed by this Court without requiring the complainant to proceed to final judgment and then seek review of the challenged action on appeal from that judgment."

But in *Pearlman* the Court of Appeals recognized a qualification to the corollary, which it had indicated in *Lee v. State,* 161 Md. 430. We discussed *Lee* in *Raimondi,* at 470-471:

> "In *Lee v. State,* 161 Md. 430, decided in 1931, the Court of Appeals held that 'its jurisdiction is limited to the reviewing of final actions of the trial court;' accordingly, it declined to 'take up cases from the trial courts piecemeal.' Were it otherwise, the *Lee* court said, 'then proceedings in every criminal case, great or small, may be stopped and delayed while the accused prosecutes an appeal * * *' on matters preliminary to trial on the merits of the case. And this, continued the court in *Lee,* 'would add just so much to the resources of those who might find vexatious delays advantageous, and would multiply appeals in criminal cases, often when acquittals, in the end, would render them profitless.' The precise holding in *Lee* was that the selection of the forum to which a capital case had been removed was within the lower court's discretion and was not a final order immediately reviewable on appeal. Conversely, the court recognized that had there been a refusal to grant the accused his absolute Maryland constitutional right in a capital case to such removal, such a determination would have amounted to a final

judgment on the constitutional right and as such would have been immediately open to review on appeal. *Lee* concluded, on authority of *Tidewater Portland Cement Co. v. State*, 122 Md. 96, that 'only decisions on claims of such absolute constitutional rights have been held reviewable at once,' and that 'orders within the discretion of the lower courts [such as whether to remove a non-capital case] are, on the contrary, not final orders within the meaning of the rules governing the jurisdiction of this court, and are therefore not immediately reviewable, if reviewable at all.' " [8]

The Court explained the qualification in *Pearlman*, at 71:

"The corollary is subject to the qualification that even though a constitutional right is involved, action of the lower court rightfully exercising discretion as to the functioning of the right will not be so reviewed."

The distinction between the corollary and the qualification stands out in *Pearlman*. The Court held that "* * * a ruling by the lower court recognizing that the defendant was indigent but nevertheless denying him the right to pursue a motion for a new trial as an indigent constituted a final judgment on a constitutional right, from which an immediate appeal would lie, since it terminated the right of the indigent accused to further litigate his case." *Raimondi*, at 472. The Court made clear, however, that its ruling "* * * does not mean that every exercise of discretion or judgment by the trial courts in determining whether an applicant for a new trial motion is or is not an indigent person, or as to how

---

8. See *Gibson v. State*, 17 Md. App. 246, with respect to right of removal in capital and non-capital cases. See also *Furman v. Georgia*, 408 U. S. 238 and *Bartholomey v. State*, 267 Md. 175, which this Court interpreted in *McLaughlin v. Warden*, 16 Md. App. 451 as abolishing the death penalty in Maryland. Cf. *Smith & Whisman v. State*, 2 Md. App. 72, in which we recognized that in capital cases the refusal to grant a removal at any time before the jury panel is completed amounts to a final judgment on a constitutional right and is immediately reviewable. The right is absolute, and no discretion "as to the functioning of the right" is ever involved.

much he can pay towards the cost of a transcript or a lawyer, is immediately appealable." *Pearlman,* at 74.

We concluded in *Raimondi,* at 472:

> "We think it clear that *Lee* and *Pearlman* share this common thread: that in a criminal proceeding, where the lower court, prior to trial, recognizes the applicability of a particular constitutional right, but nevertheless refuses to apply it in the accused's case, then such action constitutes a final judgment since it involves the nondiscretionary refusal of the court to grant the accused an absolute constitutional right; but it is otherwise where the lower court makes a determination, based on the facts and circumstances of the case, that the constitutional right is not applicable to the accused's case, for in that event, as stated by the court in *Pearlman,* 'even though a constitutional right is involved, action of the lower court rightfully exercising discretion as to the functioning of the right will not be so reviewed.' "

And we expressed our belief, at 473:

> "But whether a person has been denied a speedy trial or is being placed in double jeopardy will usually turn on the facts and circumstances present in the particular case; and, at least with the exception of those cases where the trial judge concludes that the right exists and is applicable but nevertheless refuses to apply it, the determination of the question by the lower court would always seem to involve an application of judicial discretion 'as to the functioning of the right' squarely within the rules enunciated in *Pearlman* and *Lee* prohibiting immediate appeals from interlocutory orders."

In *Raimondi* we did not attempt to resolve the rulings in *Lee* and *Pearlman* with the apparent exceptions thereto in *Jones* and *Harris,* because "Whether a real distinction exists between the rationale underlying *Lee* and *Pearlman,* on the

one hand, and *Harris, Jones* and *Brown,* on the other, makes little difference in appellant's case, since under none of these cases would he have a right to an immediate appeal from the denial of his pretrial motion to dismiss the indictment." 8 Md. App. at 473.

## II

We believe that the time has come for us to reconsider the position we have taken on the basis of *Jones* and *Harris.* On only one of the 25 occasions when the claim was before the Court of Appeals and resolved in a reported opinion did it hold the right to a speedy trial had been unconstitutionally denied, and that one case was *Jones.* At the time we decided *State v. Lawless,* 13 Md. App. 220, on 21 October 1971, we had dealt with the question in 59 reported opinions, including *Lawless.* On only two occasions did we hold that the right to a speedy trial was unconstitutionally denied, *Wilson v. State,* 8 Md. App. 299, and *Caesar v. State,* 10 Md. App. 40. See note 4, 13 Md. App. at 226. Since *Lawless,* we have considered a claim of the denial of a speedy trial in 19 reported opinions, in none of which did we find that the constitutional right was violated. Since the inception of our Court we have had the question of double jeopardy before us in some 18 reported cases. In only two, *State v. Campbell,* 7 Md. App. 538, and *Jones v. State,* 17 Md. App. 504, did we find that another trial would put the accused twice in jeopardy.[9] The piecemeal appellate review of immediate, and, with very few exceptions, patently frivolous appeals from a refusal to dismiss an indictment on an allegation of denial of a speedy trial or of double jeopardy does just what the Court in *Lee* anticipated. "[P]roceedings in every criminal case, great or small, may be stopped and delayed

---

**9.** Approximately one-quarter of the opinions of the Court of Special Appeals are reported. Claims of violation of the right to a speedy trial or the guarantee against double jeopardy have been presented to us in cases many more times than is reflected in the reported opinions and have been disposed of in unreported *per curiam* opinions as not of "substantial interest as a precedent," pursuant to the mandate of Rule 1092 b. In all likelihood, had we found in any of those cases that the right to a speedy trial had been denied or the guarantee against being twice put in jeopardy had been violated, the opinion would have been published.

while the accused prosecutes an appeal * * * [adding] just so much to the resources of those who might find vexatious delays advantageous, and [multiplying] appeals in criminal cases * * *." *Lee*, at 434. We believe that it is now more beneficial to the proper administration of criminal justice and of little detriment in the circumstances to the vast majority of those accused of crime, that we follow the rulings of *Lee* and *Pearlman* rather than the apparent exceptions of *Jones* and *Harris*. We observe that we pointed out in *Harris v. State*, 6 Md. App. 7, *cert. denied*, 255 Md. 741, that the trial court has discretion to defer a motion made before trial raising defenses or objections,[10] for determination on the general issue. We said, at 19: "If the court, exercising the discretion so granted, ordered that a pre-trial motion to dismiss based on a denial of a speedy trial or any other ground be deferred for determination at the trial of the general issue, there would be no judgment from which to take an immediate appeal." See Rule 725 d. Some trial courts have been taking this course, and we perceive no unfavorable results. And we emphasize that the denial of an immediate appeal does not foreclose appellate review of the claim in the event an accused is convicted upon trial on the merits. Rule 1087. The reasoning of the Court of Appeals in the *Harris* case before it, 194 Md. 288, was based, in part at least, on the thought that should the accused prevail on his motion he would thereby "become entitled to be freed of further proceedings" in the case. At 294. The result of a grant of a motion to suppress evidence is frequently the inability of the State to prove its case, but an immediate appeal does not lie from a refusal to grant the motion.

We are of the opinion, as we indicated in *Raimondi*, that whether a speedy trial has been denied or whether an accused will be twice put in jeopardy, will usually turn on the facts and circumstances present in the particular case. This has been evident, certainly, in the cases which have come before us. Thus, the determination of the question by

**10.** Except, in certain circumstances, a motion to suppress evidence obtained by an alleged unlawful search and seizure. Rule 729 d 1.

the lower court would seem to involve an application of judicial discretion "as to the functioning of the right" squarely within the rule enunciated in *Pearlman* and *Lee* prohibiting immediate appeals from interlocutory orders. We shall follow the rule of *Pearlman* and *Lee* except in those cases where the trial judge concludes that the constitutional right exists and is applicable but nevertheless refuses to apply it. To the extent that this is a departure from our cases heretofore decided, we depart from them.

III

DARLENE A. NEAL was charged under a warrant with shoplifting, proscribed by Code, Art. 27, § 551 A. The case came on for trial before a jury in the Circuit Court for Montgomery County on 6 December 1972. Upon conclusion of the State's case, the court *sua sponte* declared a mistrial. On 3 July 1973 Neal moved that "the warrant and all charges arising thereunder be dismissed" for reason that any subsequent trial would put her twice in jeopardy. The motion was denied prior to a retrial upon hearing on 25 July. Neal appealed.

It is clear from the reasons given by the hearing judge that he recognized the constitutional right but on the facts and circumstances found that it was not applicable.[11] Thus,

---

11. At the aborted trial the State attempted to show through its first witness, a store employee, the value of the goods alleged to have been stolen. Objection was made on the ground that the witness could not identify the articles as those which had been stolen. Thereupon, the articles were introduced for identification only on a proffer by the State that it would offer them into evidence upon testimony of a store detective who had recovered them. The court said: "If the proffer is not made good, the Court proposes to entertain favorably by you a motion to strike that evidence. The Court will permit his testimony concerning the value, subject to making good on your proffer." Later in the trial when the State attempted to make good on its proffer, the defense for the first time, challenged the admissibility of the articles on the ground of an illegal search and seizure. The court, upon hearing out of the presence of the jury, granted the motion to suppress. Subsequently it granted a mistrial *sua sponte* because it believed that the striking of the testimony concerning the articles would not be sufficient to enable Neal to have a fair trial, even though it was of the opinion that the evidence was sufficient to convict with the challenged articles excluded. It, therefore, denied a motion for judgment of acquittal.

In denying the motion to dismiss the charges, the court found no prosecutorial "overreaching or manipulation or harassment." It explained: "The Court felt that since the merchandise, which had been identified and

the determination by the court below to deny the motion to dismiss was an exercise of judicial discretion as to the functioning of the right. As such, it was interlocutory, and appeal therefrom was premature. We dismiss the appeal. Rule 1035, §§ a and b. If the State retries Neal and she is convicted, we shall determine the double jeopardy issue if presented to us.

*Appeal dismissed; case remanded for further proceedings.*

---

testified about during the entire trial, when finally offered in evidence was so firmly implanted in the jury's mind that after granting the motion to suppress no amount of admonition or instruction to the jury to disregard all the testimony concerning State's Exhibit Nos. 1, 2 and 3 would have erased that memory or those mental pictures formed as to that evidence.

"Having so concluded, the Court felt that to let the case proceed to verdict would have been a violation of the defendant's rights and having concluded further that there was no proper basis for granting the motion for judgment of acquittal in those circumstances, the State sought to have an opportunity to present its uninfected evidence at a further proceeding." See *Baker v. State,* 15 Md. App. 73; *Jones v. State,* 17 Md. App. 504.